UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEADLINE AGENCY, INC., a California Corporation,<br>Plaintiff,<br>v.<br>ZEVIA PBC, a Delaware corporation; ZEVIA CORPORATION, a Delaware corporation; ZEVIA LLC, a Delaware Limited Liability Company; and DOES 1–50, inclusive,<br>Defendants. | Case No.: 3:26-cv-02896-WQH-SBC<br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss filed by Defendants Zevia PBC and Zevia LLC on May 14, 2026, (ECF No. 4), and joined by Defendant Zevia Corporation on June 12, 2026, (ECF No. 9).

## I. BACKGROUND

On April 7, 2026, Plaintiff Headline Agency, Inc. ("Plaintiff") filed a Complaint in the Superior Court of the State of California for the County of San Diego against

Defendants Zevia PBC, Zevia Corporation, Zevia LLC (collectively, “Defendants”), and Does 1-50. (ECF No. 1-3.)

On May 7, 2026, Defendants Zevia PBC and Zevia LLC removed the action to this Court, alleging federal question jurisdiction. (ECF No. 1.)

On May 14, 2026, Defendants Zevia PBC and Zevia LLC filed a Motion to Dismiss Plaintiff’s Complaint. (ECF No. 4.) On June 12, 2026, Zevia Corporation joined the Motion to Dismiss. (ECF No. 9.) On June 22, 2026, Plaintiff filed a Response in Opposition to the Motion to Dismiss. (ECF No. 11.) On July 2, 2026, Defendants filed a Reply to Plaintiff’s Response in Opposition. (ECF No. 12.)

## II. ALLEGATIONS IN THE COMPLAINT

In August 2025, Plaintiff Headline Agency, Inc., a marketing and advertising agency “known for its unique ‘oddvertising’ ideas,” (ECF No. 1-3 at ¶15), “conceived, developed, and began publicly teasing (i.e., not disclosing Headline’s original, confidential, trade secret information) a novel out-of-home and social media stunt [hereinafter, the “Campaign”] centered on the use of a fully branded garbage truck to dramatize a ‘clean’ or ‘natural ingredients’ narrative for consumer-packaged goods brands,” *id.* at ¶17. By November 6, 2025, Plaintiff had developed the Campaign into “[a] fully realized concept with a related rollout strategy, including . . . a defined creative premise and messaging framework; detailed executional plans addressing vehicle sourcing, routing, and timing; an integrated social and creator-led amplification strategy, budget modeling, and activation timelines; and the identification of experiential partners capable of executing the Campaign at scale.” *Id.* at ¶19.

On November 6, 2025, Defendants Zevia PBC, Zevia Corporation, and Zevia LLC—owners of a zero-sugar soda brand, *id.* at ¶16—reached out to Plaintiff expressing interest in the Campaign after viewing Plaintiff’s LinkedIn post “teasing” it, *id.* at ¶20. Plaintiff responded by providing “a confidential, detailed slide deck outlining the Campaign, including its strategic rationale, creative framework, executional plan, and

projected performance metrics." *Id.* at ¶21. Defendants requested a meeting with Headline to discuss the Campaign further. *Id.*

On November 12, 2025, Plaintiff met with Defendants' internal brand and marketing team, including Defendants' Brand Manager, Marketing Director, and Associate Creative Director. *Id.* at ¶22. Plaintiff's presentation during the meeting, marked "CONFIDENTIAL," covered "the full scope of the Campaign," including:

a. The core creative premise of juxtaposing "clean" soda against a "garbage" vehicle;
b. Messaging frameworks and headline language designed to confront mainstream soda brands;
c. Timing and contextual relevance to January resolutions and "detox" culture;
d. Geographic execution considerations tied to high-visibility public events;
e. Social, creator, and paid amplification strategies; and
f. Budgetary assumptions and production logistics.

*Id.* During the presentation, Defendants "asked targeted questions regarding customization of messaging, alternative markets outside of New York City, creator selection, budget breakdowns, and scalability," *id.* at ¶23, indicating interest in the "potential purchase and use of the Campaign," *id.* at ¶24.

On November 13, 2025, Defendants' Associate Creative Director emailed Plaintiff to "propose a specific execution opportunity tied to January 9, 2026, in Atlanta, coinciding with the Chick-fil-A Peach Bowl." *Id.* Plaintiff began performing groundwork "at Defendants' request," including "consulting with experiential partners regarding . . . execution feasibility in Atlanta," "exploring alternative truck configurations," "advising on creative trade-offs," and "responding to Defendants' internal regrouping and expansion of stakeholders on the email thread." *Id.* at ¶25.

On November 18, 2025, Defendants emailed Plaintiff stating that Defendants would "'pass on the dump truck [i.e., the Campaign] at this time' and were shifting toward a different out-of-home approach." *Id.* at ¶27 (alteration in original). Up to and including this point, Defendants did not advise Plaintiff that Defendants "considered the Campaign non-

proprietary, already in development, or free for independent use." *Id.* at ¶26. Neither did Defendants take steps to inform Plaintiff of "any intention to internally replicate or appropriate the Campaign," including by acquiring a license, compensating Plaintiff, or otherwise reserving the right to use the campaign to any extent. *Id.* at ¶¶26-27, 31.

On January 9, 2026, Defendants launched a "Garbage Truck Takeover" advertising campaign through their own marketing channels. *Id.* at ¶29. The campaign "wholesale copie[d] the core elements of [Plaintiff's] proprietary Campaign," including:

a. The use of a branded garbage truck as the central visual and narrative device;
b. Messaging positioning mainstream soda as "garbage" and Defendants' soda as the clean alternative;
c. Integration with a January "detox / quitting" campaign theme;
d. Geographic execution tied to a high-profile public event; and
e. Social and PR amplification consistent with Headline's confidential Campaign.

*Id.* at ¶30. The Garbage Truck Takeover campaign generated "widespread industry and trade press coverage," which the Defendants amplified through their own marketing channels. *Id.* at ¶¶33, 34. Throughout their participation in the coverage, Defendants "repeatedly positioned the Garbage Truck Takeover as a novel concept and campaign, reinforcing the impression that the strategy originated internally." *Id.* at ¶34.

One such example occurred during a January 27, 2026 interview titled "How a Strategic Shift Helped Zevia Win at Walmart" with industry podcast Taste Radio. *Id.* at ¶35. There, Defendants' President and Chief Executive Officer framed the Garbage Truck Takeover "as part of Defendants' forward-thinking, disruptive marketing approach." *Id.* Another example occurred in a series of February 2026 LinkedIn posts by Defendants' Chief Marketing Officer, Marketing Director, and Associate Creative Director. *Id.* at ¶¶36-37. The posts "highlight[ed] the creative audacity of Defendants' 'ambitious, creative, entrepreneurial get-it-done team.'" *Id.* at ¶37. At no point did Defendants attribute the Garbage Truck Takeover idea to Plaintiff. *Id* at ¶40.

The Complaint asserts five claims against Defendants: (1) misappropriation of trade secrets under the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426 *et seq.*; (2) misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*; (3) unfair competition under the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; (4) fraud; and (5) breach of implied contract. *See id.* at ¶¶41-70

## III. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim for relief, a pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under FRCP Rule 12(b)(6) "is proper only where there is no cognizable legal theory[,] or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting Fed. R. Civ. P. 8(a)). While a pleading "does not require 'detailed factual allegations,'" FRCP Rule 8 nevertheless "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotations omitted).

Claims sounding in fraud or mistake must additionally comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a complaint "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) "requires . . . an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quotation omitted). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation and internal quotations omitted).

## IV. DISCUSSION

### A. Contentions of the Parties

Defendants contend that: (1) the Complaint's implied contract, fraud, and unfair competition claims should be dismissed as displaced by CUTSA;[1] (2) the Complaint fails to allege sufficient facts to state a plausible claim for trade secret misappropriation under DTSA and CUTSA; (3) the Complaint fails to allege sufficient facts to state a plausible

---

[1] Zevia refers to "preempt[ion] by CUTSA." (*See, e.g.*, ECF No. 4-1 at 5.) The California Supreme Court "has criticized the use of 'preempt' to describe the supersession of one state law by another." *Silvaco Data Sys. v. Intel Corp.*, 109 Cal. Rptr. 3d 27, 48 n.14 (Cal. Ct. App. 2010) (citation omitted), *abrogated on other grounds by*, *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 895 (Cal. 2011). The Court uses the term "displacement" to refer to Zevia's CUTSA "preemption" argument.

claim for breach of implied contract and fraud; and (4) the Complaint fails to allege sufficient facts to support its prayer for punitive damages. (ECF No. 4-1 at 5.)

Plaintiff contends that: (1) determining CUTSA displacement is premature at the motion to dismiss stage, and that, in any event, the Complaint's implied contract and unfair competition claims are not displaced by CUTSA, (ECF No. 11 at 23); (2) the Complaint adequately pleads trade secrets misappropriation under DTSA and CUTSA, *id.* at 13-20; (3) the Complaint adequately pleads its implied contract, unfair competition, and fraud claims, *id.* at 23-26; and (4) the Complaint adequately alleges its prayer for punitive damages. *Id.* at 26-27.

**B. CUTSA Displacement**

Defendants contend that CUTSA displaces Plaintiff's claims for unfair competition, fraud, and breach of implied contract, because those claims "sound in the same nucleus of facts as [Plaintiff's] CUTSA claim." (ECF No. 4-1 at 8.)

CUTSA provides various remedies for the misappropriation of trade secrets. *See* Cal. Civ. Code §§ 3426.2-3426.4. The statute states in relevant part:

> (a) Except as otherwise expressly provided, this title does not supersede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets.
> (b) This title does not affect
>> (1) contractual remedies, whether or not based upon misappropriation of a trade secret,
>> (2) other civil remedies that are not based upon misappropriation of a trade secret, or
>> (3) criminal remedies, whether or not based upon misappropriation of a trade secret.

Cal. Civ. Code §§ 3426.7(a)-(b).

California courts have interpreted CUTSA to displace certain claims for which the "conduct at the heart of [the] claim" relates to misappropriation of trade secrets. *K.C. Multimedia, Inc. v. Bank of America Tech. & Operations, Inc.*, 90 Cal. Rptr. 3d 247, 263 (Cal. Ct. App. 2009). The statute "expressly allows contractual and criminal remedies, whether or not based on trade secret misappropriation." *Id.* at 258 (internal quotations

omitted); *see also* Cal. Civ. Code § 3426.7(b). Aside from contractual remedies, CUTSA displaces civil "common law claims that are 'based on the same nucleus of facts as the misappropriation of trade secrets claim for relief.'" *K.C. Multimedia, Inc.*, 90 Cal. Rptr. 3d at 261 (quoting *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005)).

"[T]he determination of whether a claim is based on trade secret misappropriation [for displacement purposes] is largely factual." *K.C. Multimedia, Inc.*, 90 Cal. Rptr. 3d at 258 (citations omitted). This factual inquiry requires "examin[ing] the conduct alleged in the claim" to see if that conduct is "based upon misappropriation." *Id.* at 261 (citations omitted). CUTSA displaces state law claims that "do not genuinely allege 'alternative legal theories' but are a transparent attempt to evade the strictures of CUTSA by restating a trade secrets claim as something else." *Silvaco Data Sys. v. Intel Corp.*, 109 Cal. Rptr. 3d 27, 54 (Cal. App. 6th Dist. 2010). To avoid CUTSA displacement, a state law claim must identify conduct that does "not depend for its supposed wrongfulness on the use of trade secrets." *Id.* at 51; *see also RSPE Audio Sols., Inc. v. Vintage King Audio, Inc.*, No. CV 12-06863 DDP PJWX, 2013 WL 1120664, at *3 (C.D. Cal. Mar. 18, 2013) (explaining that claims "fall within CUTSA's ambit where the basis of the property interest is rooted in the information's private nature"). "At the pleadings stage, the [CUTSA] supersession analysis asks whether, stripped of facts supporting trade secret misappropriation, the remaining factual allegations can be reassembled to independently support other causes of action." *Waymo LLC v. Uber Tech., Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017) (citing *Qiang Wang v. Palo Alto Networks, Inc.*, No. C 12-05579 WHA, 2013 WL 415615, at *4 (N.D. Cal. Jan. 31, 2013)).

The parties make two general contentions regarding this Court's review of CUTSA displacement. Plaintiff contends that determining CUTSA displacement at this stage of proceedings is premature, because "the question . . . is bound up with whether the Campaign qualifies as a trade secret and whether each claim rests on the 'same nucleus of facts' as the misappropriation claim." (ECF No. 11 at 23.) Defendants contend that,

because the implied contract, fraud, and unfair competition claims each "directly incorporate[] the allegations which make up [Plaintiff's] CUTSA claim," there is "no doubt that its non-CUTSA claims are based on the same nucleus of facts as the CUTSA claim." (ECF No. 4-1 at 9.)

First, the Court need not rule on whether Plaintiff's Campaign constitutes a "trade secret" under CUTSA to determine whether Plaintiff's claims are displaced. Plaintiff cites *Genasys Inc. v. Vector Acoustics, Ltd. Liab. Co.*, 638 F. Supp. 3d 1135, 1155 (S.D. Cal. 2022) and *Amron Int'l Diving Supply, Inc. v. Hydrolinx Diving Commun., Inc.*, No. 11-CV-1890-H (JMA), 2011 U.S. Dist. LEXIS 122420, at *27 (S.D. Cal. Oct. 21, 2011) for the contrary proposition. However, other courts have held that CUTSA "supersedes claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret." *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011). This is because "a prime purpose of [CUTSA] was to . . . [create] a uniform set of principles for determining when one is—and is not—liable for acquiring, disclosing, or using 'information . . . of value.'" *Silvaco Data Sys.*, 109 Cal. Rptr. 3d at 53 n.22 (internal citations omitted) (quoting Cal. Civ. Code § 3426.8). Allowing claims for misappropriation of non-"trade secret" information to survive displacement by CUTSA would "impliedly *create[]* a new category of intellectual property far beyond the contemplation of [CUTSA], subsuming its definition of 'trade secret' and effectively obliterating the uniform system it seeks to generate." *Id.* Reviewing existing authority, the Court finds that determining CUTSA displacement without regard to the statutory definition of a trade secret better aligns with CUTSA's purpose and the California courts that have addressed this issue. *Mattel, Inc.*, 782 F. Supp. 2d at 987; *see also Robert Half Intern., Inc.*, 68 F. Supp. 3d 1178, 1188 (S.D. Cal. 2014) (finding that "the majority of district courts" agree) (quoting *SunPower Corp. v. SolarCity Corp.*, No. 12–CV–00694, 2012 WL 6160472, at *6 (N.D.Cal. Dec. 11, 2012)).

Here, Plaintiff alleges that Defendants have misappropriated Plaintiff's "proprietary, confidential campaign." (ECF No. 1-3 at ¶31.) Even if this "confidential campaign" does

not meet the statutory definition of a "trade secret," CUTSA would still displace a claim based on its misappropriation. The Court will accordingly examine whether each of Plaintiff's state claims are displaced by CUTSA. *See generally Waymo LLC*, 256 F. Supp. 3d at 1062 (applying the "nucleus of facts" test to determine CUTSA displacement at the motion to dismiss stage).

Second, Defendants do not cite any authority supporting their contention that incorporation of the factual allegations from a CUTSA claim into other state law claims necessarily concedes displacement by CUTSA. CUTSA displacement depends on whether the state law claim shares the same "*nucleus* of fact" as the misappropriation claim, *K.C. Multimedia, Inc.*, 90 Cal. Rptr. 3d at 261 (emphasis added), not whether the two claims share facts generally. A complaint may incorporate the same facts into two distinct allegations of wrongdoing. *Cf. Chang v. Biosuccess Biotech Co.*, 76 F. Supp. 3d 1022, 1041 (C.D. Cal. 2014) (explaining that CUTSA displacement occurs when "there is no 'material distinction' between the *wrongdoing* alleged in a [C]UTSA claim and that alleged in a different claim") (emphasis added). Additionally, "[t]he mantra 'incorporated by reference' is not sacrosanct, and under a rule of liberal interpretation cannot defeat an otherwise adequate pleading." *Henry Schein, Inc. v. Cook*, No. 16-CV-03166-JST, 2017 WL 783617, at *3 n. 4 (N.D. Cal. Mar. 1, 2017) (quoting *Ludgate Ins. Co. v. Lockheed Martin Corp.*, 82 Cal. App. 4th 592, 609 (Cal. Ct. App. 2000)). Thus, in *Henry Schein*, the court examined each of the plaintiff's non-CUTSA causes of action separately to find some not displaced by CUTSA, despite the causes of action "vaguely incorporating all prior allegations by reference." *Id.* at *3; *but cf. SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 WL 6160472, at *13 (N.D. Cal. Dec. 11, 2012) (finding CUTSA displacement and noting, without finding dispositive, that the plaintiff's non-trade secret claims incorporated the same factual allegations as their trade secret claim).

Accordingly, the Court turns to examining each of Plaintiff's non-CUTSA claims to determine if the claims "identify conduct that does 'not depend for its supposed wrongfulness on the use of trade secrets.'" *Silvaco Data Sys.*, 109 Cal. Rptr. 3d at 54.

### 1. *Implied Contract*

Defendants contend that Plaintiff's implied contract claim is displaced because "it directly incorporate[s] the trade-secret allegations and seek[s] relief for the same alleged taking and use of the Campaign." (ECF No. 4-1 at 4.) Plaintiff contends that its implied contract claim is not displaced because "CUTSA expressly leaves 'contractual remedies' intact . . . and an implied promise to refrain from using a disclosed concept does not depend on the Campaign's novelty or secrecy." (ECF No. 11 at 24.)

CUTSA "does not affect . . . contractual remedies, whether or not based upon misappropriation of a trade secret." *See* Cal. Civ. Code § 3426.7(b)(1). In *Emergy Inc. v. The Better Meat Co.*, No. 221CV02417KJMCKD, 2022 WL 7101973 (E.D. Cal. Oct. 12, 2022), the court found that implied contract claims, like express contract claims, fall outside the scope of CUTSA displacement. *Id.* at *9. The court explained that the "distinction between express and implied contract 'reflects no difference in legal effect but merely in the mode of manifesting assent,'" such that a breach of implied contract claim is a "contractual remedy" under the meaning of Section 3426.7(b)(1). *Id.* (quoting *Retired Emps. Assn. of Orange Cnty., Inc. v. Cnty. of Orange*, 52 Cal. 4th 1171, 1178 (2011)); *see also Band Pro Film & Digital, Inc. v. ARRI Inc.*, No. CV 12-03226-CJC(ANX), 2012 WL 12888099, at *4 (C.D. Cal. Oct. 10, 2012) (agreeing with Plaintiff that "its claim for breach of implied contract is not superseded by [CUTSA]").

Defendants cite *Peralta v. California Franchise Tax Bd.*, 124 F. Supp. 3d 993, 1002 (N.D. Cal. 2015), aff'd, 673 F. App'x 975 (Fed. Cir. 2016) to support their contention that CUTSA displacement reaches implied-in-fact contract claims. (ECF No. 4-1 at 9.) There, the court held that a claim for "misappropriation of idea-implied in fact contract" was displaced by CUTSA, among seven other state claims. *Peralta*, 124 F. Supp. 3d at 1002. However, the court did not discuss why claims under implied-in-fact contracts are not "contractual remed[ies]" expressly excluded from the scope of CUTSA displacement. *Id.* Other courts in this jurisdiction have held, with similarly minimal discussion, that implied contract claims were not displaced by CUTSA. *See Prostar Wireless Group, LLC v.*

*Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1006 (N.D. Cal. 2018), *aff'd,* 815 Fed. Appx. 117 (9th Cir. 2020); *GeoData Sys. Mgt., Inc. v. Am. P. Plastic Fabricators, Inc.*, No. EDCV1504125VAPJEMX, 2016 WL 6562064, at *10 (C.D. Cal. Apr. 21, 2016); *SocialApps, LLC v. Zynga, Inc.*, No. 4:11-CV-04910 YGR, 2012 WL 381216, at *3 (N.D. Cal. Feb. 6, 2012); *SMC Networks Inc. v. Hitron Techs. Inc.*, No. SACV 12-1293-JLS (RNBX), 2013 WL 12114104, at *4 (C.D. Cal. Nov. 13, 2013). The Court agrees with the reasoning of the courts who have held that implied contract claims are not displaced by CUTSA and articulated the basis for their decisions. *See, e.g.*, *Emergy Inc.*, 2022 WL 7101973 at *9.

Here, Plaintiff alleges that Defendants breached "a contract implied in fact" that it entered "by reaching out to Plaintiff and agreeing to review Plaintiff's proprietary Campaign in a confidential setting." (ECF No. 1-3 at ¶67.) The Court finds that this claim for breach of implied contract is not displaced by CUTSA because it is a "contractual remedy" under Section 3426.7(b)(1).

***2. Unfair Competition***

Plaintiff contends that the Complaint's unfair competition claim is not displaced by CUTSA because the claim alleges an "ongoing course of false attribution and misleading promotion [that] is wrongdoing separate and apart from the act of acquiring the Campaign"— referring to Plaintiff's allegations that Defendants passed off the Garbage Truck Takeover as "a novel concept of [Defendants'] own creation" in subsequent social media and industry coverage. (ECF No. 11 at 25.) Defendants contend that these allegations are not separate from Plaintiff's misappropriation claims, because the Complaint "incorporates these exact facts within its CUTSA claim . . . as to why Headline was allegedly harmed," and thus Plaintiff "conceded that its claims arise out of the same nucleus of facts." (ECF No. 12 at 8.)

Courts in this circuit have found that CUTSA does not displace unfair competition claims that allege a defendant has attempted to pass off the plaintiff's product as their own. *See, e.g.*, *MachiningCloud, Inc. v. Kennametal Inc.*, No. 2:25-CV-02158-SB-AJR, 2025

WL 2020060, at *4 (C.D. Cal. June 30, 2025) (finding no CUTSA displacement where the plaintiff alleged that defendant "attempted to pass off [Plaintiff's] Trade Secrets and/or Confidential Information as their own in messages to . . . users") (internal quotations omitted); *cf. TMC Aerospace, Inc. v. Elbit Sys. of Am. LLC*, No. CV 15-07595-AB (EX), 2016 WL 3475322, at *7 (C.D. Cal. Jan. 29, 2016) (finding no CUTSA displacement where the plaintiff alleged that the defendant "passed off [defendant's] intellectual property . . . as those of [the plaintiff's], in an effort to exploit the [plaintiff's] reputation). In *Genasys Inc. v. Vector Acoustics, LLC*, No. 22-CV-152 TWR (BLM), 2023 WL 4414222 (S.D. Cal. July 7, 2023), the court found that CUTSA did not displace an unfair competition claim because the claim alleged that the defendant "palmed off the [Plaintiff's] Materials as their own" to prospective clients. *Id.* at *25. The *Genasys* court explained that, stripping away facts supporting trade secret misappropriation, Plaintiff's "palming off" claim pled an independent wrong. *Id.* In other words, the wrongfulness of "passing off" another's work as one's own does not necessarily depend on whether that work was confidential. *Cf. Silvaco Data Sys.*, 109 Cal. Rptr. 3d at 51 (explaining that a state law claim is not displaced by CUTSA if it does "not depend for its supposed wrongfulness on the use of trade secrets"); *RSPE Audio Sols., Inc*, 2013 WL 1120664, at *3 ("[Claims] fall within CUTSA's ambit where the basis of the property interest is rooted in the information's private nature."). *But see Alta Devices, Inc. v. LG Elecs., Inc.*, No. 18-CV-00404-LHK, 2019 WL 1924992, at *9 (N.D. Cal. Apr. 30, 2019) (finding that CUTSA displaced a claim premised on a "passing off" allegation because "this type of wrongdoing appear[ed] in both [Plaintiff's] CUTSA claim and [unfair competition] claim").

Here, the Complaint's unfair competition claim alleges that Defendants "lur[ed] Plaintiff into purported 'confidential' communications regarding the Campaign only to steal the Campaign and pass it off as their own." (ECF No. 1-3 at ¶56.) To the extent the unfair competition claim rests on a theory of "luring" the Plaintiff into disclosing the Campaign, it involves the wrongful acquisition of confidential information—the same "nucleus of fact" as Plaintiff's CUTSA claim—and is thus displaced.

However, like in *Genasys*, Plaintiff's allegation that Defendants passed off Plaintiff's Campaign as Defendants' own does not depend on confidential information for its supposed wrongfulness. Though Plaintiff's CUTSA claim also includes similar 'passing off' allegations, (*see* ECF No. 1-3 at ¶42), the Court finds that these allegations do constitute the "nucleus" of Plaintiff's CUTSA claim, because Defendants' 'passing off' does not change the basis for trade secrets liability. *Cf. Silvaco Data Sys.*, 109 Cal. Rptr. 3d at 55 (holding that an unfair competition claim was not displaced by CUTSA because, though the claim may have underlying facts related to misappropriation, such facts did not change the unfair competition claim's basis of liability, only the potential damages).

Accordingly, the Court finds that Plaintiff's unfair competition claim is not displaced by CUTSA to the extent it relies on a theory of Defendants passing off Plaintiff's Campaign as Defendants' own.

***3. Fraud***

Defendants contend that Plaintiff's fraud claim is displaced by CUTSA because "it directly incorporate[s] the trade-secret allegations and seek[s] relief for the same alleged taking and use of the Campaign." (ECF No. 4-1 at 8.) Plaintiff does not rebut Defendants' contentions as to the displacement of Plaintiff's fraud claim, other than contending that deciding CUTSA displacement is premature at this stage. (*See* ECF No. 11 at 23, 26-27.)

Here, the Complaint alleges that "Defendants made knowingly false representations to Plaintiff that the disclosure of Plaintiff's proprietary Campaign during a confidential meeting would be kept confidential and that Defendants would not take or otherwise use any information derived from the Campaign without Plaintiff's express consent." (ECF No. 1-3 at ¶60.) The Court finds that the alleged fraudulent conduct arises from the same "nucleus of fact" as Plaintiff's CUTSA claim, as the conduct forms the basis of Plaintiff's allegations concerning how Defendants improperly acquired Plaintiff's trade secrets. *See K.C. Multimedia, Inc.*, 90 Cal. Rptr. 3d at 263 (finding CUTSA displacement where claim alleged conduct that "[l]egally . . . falls within the statutory definition of 'improper means'

of acquiring a trade secret, which 'includes . . . breach or inducement of a breach of a duty to maintain secrecy"). CUTSA thus displaces Plaintiff's fraud claim.

Accordingly, Defendants' Motion to Dismiss as to Plaintiff's fraud claim is granted.

**C. Failure to State a Claim**

Defendants also contend that Plaintiff fails to allege sufficient facts to support the Complaint's trade secrets, implied contract, and fraud claims, and the Complaint's prayer for punitive damages.[2] (ECF No. 4-1 at 10-15.) As the Court has found that Plaintiff's fraud claim is displaced by CUTSA, it will examine the factual sufficiency of only the Complaint's trade secrets and implied contract claims, and the prayer for punitive damages.

***1. Trade Secrets Claims***

Defendants contend that Plaintiff fails to state a claim for misappropriation of trade secrets under CUTSA and DTSA because Plaintiff "has not alleged reasonable measures to maintain secrecy of the alleged trade secret" and "fails to allege misappropriation or 'use.'" (ECF No. 12 at 3, 4.)

Courts in the Ninth Circuit analyze DTSA and CUTSA claims together because "the elements are substantially similar." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020) (citing *ChromaDex, Inc. v. Elysium Health, Inc.*, 301 F. Supp. 3d 963, 970-71 (C.D. Cal. 2017)). The Court will do so here.

DTSA provides a civil cause of action for "the misappropriation of a trade secret." 18 U.S.C. §§ 1836(b)(1), (3). To state a claim for misappropriation of trade secrets under DTSA, a plaintiff must show that "(1) the plaintiff possessed a trade secret, (2) [] the defendant misappropriated the trade secret[,] and (3) [] the misappropriation caused or threatened damage to the plaintiff." *InteliClear, LLC*, 978 F.3d at 657-58 (citing 18 U.S.C.

---

[2] Distinct from Defendants' initial contention that CUTSA displaces the unfair competition claim, Defendants also contend in their reply brief that Plaintiff fails to allege sufficient facts to support the Complaint's unfair competition claim. (ECF No. 12 at 7-8.) The Court does not consider this argument raised for the first time in the reply brief. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

§ 1839(5)). The definition of what constitutes a "trade secret" under DTSA is broad. *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081, 1087 (9th Cir. 2025) (citing *InteliClear, LLC*, 978 F.3d at 657). DTSA defines a "trade secret" as:

> [A]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if--
>
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3).[3] Defendants challenge the adequacy of the Complaint's factual allegations in regards to (1) whether Plaintiff took reasonable measures to keep the Campaign secret, and (2) whether Defendants' alleged conduct constituted misappropriation. (ECF No. 4-1.)

a. Maintenance of Secrecy

To establish the existence of a trade secret under DTSA, the owner of information must have "taken reasonable measures to keep such information secret." 18 U.S.C. § 1839(3)(A); *accord* Cal. Civ. Code § 3426.1(d)(2). This definition "does not require that confidential information be kept completely clandestine." *BladeRoom Group Ltd. v. Facebook, Inc.*, 219 F. Supp. 3d 984, 992 (N.D. Cal. 2017). Thus, public disclosure of general information about an alleged trade secret does not necessarily invalidate reasonable measures of secrecy. *See Relig. Tech. Ctr. v. Netcom On-Line Commun. Services, Inc.*, 923

[3] CUTSA defines "trade secret" similarly: "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d).

F. Supp. 1231, 1255 (N.D. Cal. 1995) ("[A]rticles may reveal information referring to or hinting at the trade secrets, but may not disclose the secrets themselves."); *Vesta Corp. v. Amdocs Mgt., Ltd*, No. 3:14-CV-01142-HZ, 2018 WL 4354301, at *16 (D. Or. Sept. 12, 2018) (finding that the plaintiff could still have taken reasonable measures of secrecy even where it published an article that spoke in "general terms" about plaintiff's allegedly secret information); *DVD Copy Control Assn., Inc. v. Bunner*, 10 Cal. Rptr. 3d 185, 192 (Cal. App. 6th Dist. 2004) ("Publication on the Internet does not necessarily destroy the secret if the publication is sufficiently obscure or transient or otherwise limited.").

In addition, "[p]roviding alleged trade secrets to third parties does not undermine a trade-secret claim, so long as the information was 'provided on an understanding of confidentiality.'" *VBS Distrib., Inc. v. Nutrivita Labs., Inc.*, 811 F. App'x 1005, 1009 (9th Cir. 2020) (citing *United States v. Nosal*, 844 F.3d 1024, 1043 (9th Cir. 2016), *overruled on other grounds by Lagos v. United States*, 584 U.S. 577 (2018), and *United States v. Chung*, 659 F.3d 815, 825-26 (9th Cir. 2011)). An "understanding of confidentiality" does not necessarily require a written confidentiality or non-disclosure agreement. *See BladeRoom Group Ltd.*, 219 F. Supp. 3d at 992 ("CUTSA's definition of what can constitute a 'trade secret' does not . . . mandate the use of non-disclosure agreements in all instances."); *see also VBS Distrib., Inc.*, 811 F. App'x at 1009 (finding that a company provided sufficient evidence of reasonable measures of secrecy, even though no written confidentiality agreement existed between the company and its vendors); *Hilderman v. Enea TekSci, Inc.*, 551 F. Supp. 2d 1183, 1201 (S.D. Cal. 2008) (finding that a "lack of confidentiality agreements is not dispositive on the issue of secrecy" when a company "may have taken other precautions to keep its information secret, such as verbally telling its clients and employees that the information was confidential"). Indeed, the Ninth Circuit has considered, without deciding, that "in some factual circumstances, a rational jury could find . . . an implied relationship of confidentiality exists between two business partners" such that it is reasonable for the plaintiff to not take any additional measures of secrecy. *Direct Techs., LLC v. Elec. Arts, Inc.*, 836 F.3d 1059, 1070 (9th Cir. 2016). For example,

an implied relationship of confidentiality might exist for a seller's "disclosure to a prospective purchaser to enable him to appraise the value of the secret." *Id.* at 1070 n.4 (quoting *Pachmayr Gun Works, Inc. v. Olin Mathieson Chem. Corp.*, 502 F.2d 802, 804 (9th Cir. 1974)).

Here, the Complaint alleges that Plaintiff communicated the Campaign to Defendants in a slide deck and presentation both marked "confidential." (ECF No. 1-3 at ¶¶21, 23.) Additionally, the Complaint alleges that these communications arose in the factual circumstance of a "disclosure to a prospective purchaser," *Direct Techs.*, 836 F.3d at 1070, with Plaintiff presenting the Campaign to Defendants so that they could "evaluate and potentially deploy the Campaign," (ECF No. 1-3 at ¶23.) The Court finds that these allegations plausibly allege that Plaintiff took reasonable measures to protect the secrecy of its Campaign. Plaintiff's LinkedIn post "teasing" the Campaign, *id.* at ¶20, only "hint[ed]" at confidential information, *Relig. Tech. Ctr.*, 923 F. Supp. at 1255, and does not undermine this finding. Defendants cite *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443 (2002) for the proposition that "[b]ecause a secrecy agreement is not in the record, . . . we do not treat as trade secret or confidential information the line review documents, as well as any other information disclosed to [the defendant]." *Id.* at 1454-55. However, in *Whyte*, the plaintiff alleged *no* additional facts regarding measures taken to protect secrecy, leading the court to find that the defendant "presumably could give the line review documents to . . . competitors." *Id.* at 1455. Here, Plaintiff alleged additional facts: confidential markings on key documents and the context of a disclosure to potential purchaser. Thus, dismissal is not warranted, and "whether Plaintiff took reasonable efforts to maintain the secrecy . . . is an issue best left for the trier of fact." *Vesta Corp.*, 2018 WL 4354301, at *16.

Accordingly, the Court finds that the Complaint adequately alleges reasonable measures to keep the Campaign secret.

b. Misappropriation

The second DTSA/CUTSA element of "misappropriation" requires either (1) "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or (2) "disclosure or use of a trade secret of another without express or implied consent" by a person falling into certain statutory categories. 18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1(b). "Improper means" is defined as "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6)(A); Cal. Civ. Code § 3426.1(a).

The two categories of misappropriation are independent; for example, information can be acquired through proper means and later misappropriated by disclosure or use. In *JustMed, Inc. v. Byce*, 600 F.3d 1118 (9th Cir. 2010), the Ninth Circuit defined "acquire" in the context of trade secrets misappropriation to mean "to come into possession, control, or power of disposal of"; the court found that, even though an employee may have improperly *retained* confidential information, he did not *acquire* it through improper means because the employee "already had possession of the source code through his work." *Id.* at 1129 (examining an identical definition of "misappropriation" in the Idaho Trade Secrets Act). By contrast, in *BladeRoom Group Ltd.*, the court found misappropriation by acquisition where the plaintiff contended that the defendant "essentially enticed [the plaintiff] to disclose confidential information to [the defendant] and third parties . . . by misrepresenting the true purpose of [a prospective business partnership] meeting." 219 F. Supp. 3d at 992 (noting that CUTSA includes "the acquisition of information by misrepresentation as a type of 'improper means' that can constitute misappropriation").

Here, the Complaint alleges that "Defendants used 'improper means' . . . to obtain the Campaign from Plaintiff by engaging in confidential communications with Plaintiff . . . knowing all along that Defendants would never seek to purchase or otherwise obtain permission to use the Campaign, and instead intending simply to steal the Campaign and pass it off as their own." (ECF No. 1-3 at 11.) Plaintiff contends that this allegation satisfies

the 'acquisition by improper means' category of misappropriation. (ECF No. 11 at 20.) Defendants do not discuss acquisition by improper means in their briefing, other than a single statement contending that Plaintiff's "theory relies on generic concepts and fails to plead facts supporting acquisition by improper means or use." (ECF No. 12 at 5.)[4] The Court finds that, like in *BladeRoom Group Ltd.*, the Complaint sufficiently alleges Defendants misappropriated Plaintiff's trade secrets through "misrepresenting the true purpose" of the communications between Defendants and Plaintiff concerning a prospective business partnership. 219 F. Supp. 3d at 992.

Plaintiff also contends that it adequately alleges misappropriation through the use of Plaintiff's trade secrets without consent. (ECF No. 11 at 20.) Defendants contend that Plaintiff "does not plausibly allege any facts that [Defendants] used anything of [Plaintiff's] versus something [Defendants] developed internally to cash in on" the "age-old American tradition" and "trope of detoxing in January." (ECF No. 4-1 at 11.) Plaintiff contends that the Complaint's "circumstantial allegations are compelling: Zevia solicited the confidential pitch, itself proposed January 9, 2026, as the launch date, declined the engagement, and then launched a materially identical campaign on that very date while publicly claiming the concept as its own." (ECF No. 11 at 22.)

Federal courts in California have held that "at the pleading stage . . . 'a complaint may . . . rely on circumstantial allegations of a defendant's misappropriation,'" *Nifty Techs., Inc. v. Mango Techs., Inc.*, No. 24-CV-194 JLS (AHG), 2024 WL 4230486, at *12 (S.D. Cal. Sept. 17, 2024) (quoting *Yeiser Rsch. & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1048 (S.D. Cal. 2017)), because "it would be unreasonable to require [Plaintiff] to demonstrate . . . the precise ways in which Defendant[] may have used

---

[4] Defendants' other contention that Plaintiff's allegations "are equally (if not more) consistent with independent development or common seasonal marketing themes" more squarely concern whether the Defendants actually used any of Plaintiff's information, rather than challenging Plaintiff's allegation that Defendants intended to acquire Plaintiff's information by misrepresenting the potential for a business partnership. (ECF No. 12 at 5.)

[Plaintiff's] trade secrets, given that Defendant[] [is] the only one[] who possess[es] such information." *Id.* (alterations in original) (quoting *Vinyl Interactive, LLC v. Guarino*, No. C 09-0987 CW, 2009 WL 1228695, at *8 (N.D. Cal. May 1, 2009)). Furthermore, allegations that a defendant "(1) had access to Plaintiff's trade secret concept and (2) thereafter developed a product using a similar concept" can support an inference of trade secret use. *Fujikura Composite Am., Inc. v. Dee*, No. 24-CV-782 JLS (MSB), 2024 WL 3261214, at *12 (S.D. Cal. June 28, 2024). In *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868 (N.D. Cal. 2018), the court found that allegations of "similarities" between the plaintiff's and the defendant's technologies sufficiently alleged misappropriation by "use" when they were "accompanied by allegations of exactly how defendants improperly obtained the alleged trade secrets." *Id.* at 883 (citing *E. & J. Gallo Winery v. Instituut Voor Landbouw—En Visserijonderzoek*, No. 1:17-cv-00808-DAD-EPG, 2018 WL 2463869, at *7 (E.D. Cal. June 1, 2018)).

Here, the Complaint alleges that "Defendants' Garbage Truck Takeover Campaign wholesale copies the core elements of [Plaintiff's] proprietary Campaign," including

a. The use of a branded garbage truck as the central visual and narrative device;
b. Messaging positioning mainstream soda as "garbage" and Defendants' soda as the clean alternative;
c. Integration with a January "detox / quitting" campaign theme;
d. Geographic execution tied to a high-profile public event; and
e. Social and PR amplification consistent with Headline's confidential Campaign.

(ECF No 1-3 at ¶30.) The Complaint also alleges additional circumstantial evidence that (1) the Defendants launched their Garbage Truck Takeover campaign on the same day as the one planned in their cancelled partnership with Plaintiff, and (2) Defendants in subsequent coverage "repeatedly positioned the Garbage Truck Takeover campaign as a novel concept . . . uniquely conceived by Defendants" while not disclosing their communications with Headline. (ECF No. 1-3 at ¶¶24, 29, 34.) Like in *Alta Devices*, the Complaint also alleges exactly how Defendants "improperly obtained" the alleged trade secrets—engaging in a confidential meeting and other communications while "knowing all

along that Defendants would never seek to purchase the Campaign." (ECF No. 1-3 at 10.) The Court finds that these circumstantial allegations of similarities between Defendants' Garbage Truck Takeover and Plaintiff's Campaign adequately supports a claim of misappropriation by use.

Because the Court finds that the Complaint adequately alleges reasonable measures of secrecy and conduct constituting misappropriation, the Defendants' Motion to Dismiss as to the Complaint's trade secrets claims is denied.

### ***2. Implied Contract***

Defendants contend that the Complaint fails to state a claim for breach of an implied contract because it "does not allege any facts that would show there was any 'meeting of the minds' on terms." (ECF No. 4-1 at 12.)

The standard elements of a claim for breach of contract are: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom." *Wall St. Network, Ltd. v. New York Times Co.*, 164 Cal. App. 4th 1171, 1178 (2008). "A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct." *Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (2008). However, "the assumption, intention or expectation of either party alone, not made known to the other, can give rise to no inference of an implied contract . . . ." *Travelers Fire Ins. Co. v. Brock & Co.*, 47 Cal. App. 2d 387, 392 (1941).

"[T]he California Supreme Court has held that contract law may provide protection to a person who submits an idea to others with the understanding that the idea is submitted in consideration for a promise of payment for its use." *Jordan-Benel v. Universal City Studios, Inc.*, 859 F.3d 1184, 1191 (9th Cir. 2017) (citing *Desny v. Wilder*, 46 Cal.2d 715, 299 P.2d 257, 268-69 (1956)). As the Ninth Circuit notes:

> In *Desny,* the California Supreme Court explained that where an idea is furnished by one party to another, a contract sometimes may be implied even

> in the absence of an express promise to pay. . . . To establish a *Desny* claim for breach of implied-in-fact contract, the plaintiff must show that the plaintiff prepared the work, disclosed the work to the offeree for sale, and did so under circumstances from which it could be concluded that the offeree voluntarily accepted the disclosure knowing the conditions on which it was tendered and the reasonable value of the work.

*Grosso v. Miramax Film Corp.*, 383 F.3d 965, 967 (9th Cir. 2004), *opinion amended on denial of reh'g,* 400 F.3d 658 (9th Cir. 2005). In *Landsberg v. Scrabble Crossword Game Players, Inc.*, 736 F.2d 485 (9th Cir. 1984), the Ninth Circuit found that the defendant's "request for a second copy of [plaintiff's] manuscript may constitute conduct creating an implied-in-fact contract binding [defendant] to pay for [plaintiff's] ideas when used." *Id.* at 490; *see also Gunther-Wahl Productions, Inc. v. Mattel, Inc.*, 128 Cal. Rptr. 2d 50, 62-63 (Cal. App. 2d Dist. 2002) (finding that a jury could reasonably determine an implied contract existed where a defendant "clearly invited" a plaintiff to disclose a product, even if plaintiff did not "clearly condition" disclosure on payment). In *JBF Interlude 2009 Ltd. v. Quibi Holdings LLC*, No. 220CV02250CASSKX, 2020 WL 6203555 (C.D. Cal. Oct. 19, 2020), the court found that the plaintiff had adequately stated a *Desny* claim by alleging facts showing that (1) the plaintiff had disclosed non-public information involving a product during a meeting with defendants, and (2) defendants had expressed interest in purchasing plaintiff's product during the same meeting. *Id.* at *6.

Here, Defendants contend that the course of conduct alleged by the Complaint between the parties was "exploratory, not obligatory," (ECF No. 4-1 at 12), and that the Complaint lacks "the terms of the alleged contract . . . [or] details about the cost and types of services to be received as part of any contract," (ECF No. 12 at 7). The Complaint alleges that "[b]y reaching out to Plaintiff and agreeing to review Plaintiff's proprietary Campaign in a confidential setting for the purpose of determining whether Defendants wanted to purchase the Campaign for use in their business, Defendants entered into a contract implied in fact that Defendants would not take or otherwise use any information derived from the Campaign without Plaintiff's express consent." (ECF No. 1-3 at ¶67.)

Defendants do not contest under *Grosso* that Plaintiff prepared the Campaign, nor that Plaintiff disclosed the work for sale. Like in *Landsberg* and *Gunther-Wahl Productions*, Defendants are alleged to have "affirmatively reached out" to Plaintiff to request information about Plaintiff's Campaign. *Id.* at ¶20. Like in *JBF Interlude 2009*, the Complaint alleges that Plaintiff disclosed confidential information in a meeting and other communications with the Defendants, during which the Defendants expressed interest in the "potential purchase and use of the Campaign." *Id.* at ¶22-24. The Court finds that the Complaint adequately alleges "circumstances from which it could be concluded that the [Defendants] voluntarily accepted the disclosure knowing the conditions on which it was tendered," *Grosso*, 383 F.3d at 967—that Defendants not "use any information derived from the Campaign without Plaintiff's expressed consent." (ECF No. 1-3 at ¶15.) The Complaint thus sufficiently states a *Desny* claim for breach of implied contract.

Accordingly, Defendants' Motion to Dismiss as to the implied contract claim is denied.

***3. Punitive Damages***

Defendants contend that Plaintiff fails to plead sufficient facts to support the Complaint's prayer for punitive damages. (ECF No. 12 at 10.)

DTSA and CUTSA allow exemplary damages where the misappropriation was "willful and malicious." 18 U.S.C. § 1836(b)(3)(B)(2); Cal. Civ. Code § 3426.3(c). Under California pleading standards, "[t]o support punitive damages, the complaint . . . must allege ultimate facts of the defendant's oppression, fraud, or malice." *Cyrus v. Haveson,* 65 Cal.App.3d 306, 316-17 (1976) (citing Cal. Civ. Code § 3294(a)). Federal Rule of Civil Procedure 9(b) provides that "[m]alice, intent, knowledge and other conditions of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). Additionally, the Ninth Circuit has stated of Rule 8(a)(3) that "a simple request 'for damages' would satisfy the notice requirement [of Rule 8(a)(3)] without imposing any undue burden on the drafter" but "the useless statement, 'I was wronged and am entitled to judgment for everything to which I

am entitled'" does not satisfy the notice requirement. *Seven Words LLC v. Network Solutions,* 260 F.3d 1089, 1098 (9th Cir. 2001).

"District courts in this circuit have disagreed over whether the pleading standards [of the Federal Rules of Civil Procedure] may be used to dismiss a prayer for punitive damages." *Hennighan v. Insphere Ins. Solutions, Inc.,* No. 13–CV–638–JST, 2013 WL 1758934, at *6 (N.D. Cal. Apr.24, 2013) (citing cases and stating that "[t]his Court is not persuaded that *Twombly* and *Iqbal* apply to claims for punitive damages"). Among the district courts in this circuit of the opinion that federal pleading standards may be used to dismiss a prayer for punitive damages, there is further disagreement as to whether conclusory averments of malice or fraudulent intent suffice, often in reference to the plain language of Rule 9(b). *Compare Kelley v. Corrections Corp. of America,* 750 F. Supp. 2d 1132, 1147 (E.D. Cal. 2010) (dismissing the plaintiff's claims for punitive damages because they contained "nothing more than conclusory allegations of 'conscious disregard of [Plaintiff's] rights . . . such as to constitute oppression, fraud, or malice'") *with Roe v. CoreCivic, Inc.*, 823 F. Supp. 3d 1137, 1161-62 (S.D. Cal. 2026) ("To satisfy the federal pleading standard for punitive damages, a plaintiff may include a short and plain prayer for punitive damages that relies entirely on unsupported and conclusory averments of malice or fraudulent intent.") (quoting *Alejandro v. ST Micro Elecs., Inc*, 129 F. Supp. 3d 898, 917 (N.D. Cal. 2015)).

Defendants contend that "Plaintiff pleads nothing more than the language of Section 3294, without pleading a single supporting fact that would support malice, oppression or fraud." (ECF No. 4-1 at 14.) Defendants further contend that Plaintiff "asks this Court to deduce intentional and malicious conduct from conclusory statements without facts." (ECF No. 12 at 9.) Here, the Complaint alleges that "Defendants' conduct, as described herein, was malicious, fraudulent, oppressive, mean, vile, despicable, and in conscious disregard of Headline's rights." (ECF No. 1-3 at ¶14.) The trade secrets causes of action in the

Complaint[5] allege that Defendants "concocted a scheme to obtain the Campaign from Plaintiff by engaging in confidential communications with Plaintiff to learn about Plaintiff's proprietary Campaign, knowing all along that Defendants would never seek to purchase or otherwise obtain permission to use the Campaign, and instead intending simply to steal the Campaign and pass it off as their own." *Id.* at ¶¶42, 49. The trade secrets causes of action are supported by factual allegations regarding communications between the parties, similarities in substance and execution between Plaintiff's Campaign and Defendants' Garbage Truck Takeover campaign, and Defendants' later public "highlighting" of the Garbage Truck Takeover as an original, in-house idea. *Id.* at ¶20-27, 30-34.

Taking the Complaint's allegations as true, and drawing all inferences in the Plaintiff's favor, the Court finds that the Complaint makes more than conclusory allegations for the purposes of punitive damages. Rather, the Complaint plausibly alleges malice and fraudulent intent through an overall "scheme" by Defendants to obtain Plaintiff's confidential information through falsely representing Defendants' interest in a marketing partnership. *See Kelley*, 750 F. Supp. 2d at 1148 (noting that examples of allegations supporting punitive damages could include "any misrepresentation by Defendant"); *cf. Officia Imaging, Inc. v. Langridge*, No. SACV172228DOCDFMX, 2018 WL 6137183, at *14 (C.D. Cal. Aug. 7, 2018) (denying motion to strike punitive damages prayer in a trade secrets case where an allegation that Defendants "knowingly mislead Plaintiff about contractual terms," together with other allegations, "plausibly suggest Defendants' conduct was motivated by malice or fraudulent intent"); *Doe 1 v. United Airlines, Inc.*, No. CV2005554RSWLAGRX, 2021 WL 4595766, at *6 (C.D. Cal. Apr. 22, 2021) (finding general allegations of mental state supported by factual allegations of specific acts or omissions sufficient for punitive damages prayer); *Opperwall v. State Farm*

---

[5] The Court does not rule on the sufficiency of the prayer for punitive damages in the Plaintiff's fraud claim, as it has already found that the fraud claim fails to state a claim on CUTSA displacement grounds.

*Fire & Cas. Co.*, No. 17-CV-07083-YGR, 2018 WL 1243085, at *5 (N.D. Cal. Mar. 9, 2018) (dismissing claim for punitive damages only where the allegations failed to provide Defendants "with fair notice of the nature of plaintiff's claims"). The Court does not decide the issue of whether *Twombly* and *Iqbal*'s plausibility standard or the plain language of Rules 8(a)(3) and 9(b) applies to prayers for punitive damages, because Defendants' Motion to Dismiss would be denied under any of these standards.

Defendants also contend that Plaintiff's prayers for punitive damages fail to identify acts of specific employees in accordance with California Civil Code Section 3294(b). "Section 3294(b) states that a corporate employer is not liable unless an officer, director, or managing agent of the corporation authorized or ratified the wrongful conduct for which the damages are awarded. Courts have applied a variety of standards for properly pleading authorization/ratification." *Singh v. Amguard Ins. Co.*, No. CV 16-618 PSG (AJWX), 2016 WL 7469641, at *5 (C.D. Cal. Apr. 1, 2016). Federal courts in California have dismissed prayers for punitive damages against corporate defendants where the plaintiff failed to allege *any* acts by individual employees. *See, e.g.*, *Taiwan Semiconductor Mfg. Co., Ltd. v. Tela Innovations, Inc.*, No. 14-CV-00362-BLF, 2014 WL 3705350 at *6 (N.D. Cal. July 24, 2014); *Gastelum v. Town Ctr. Village II, LLC*, No. 3:25-CV-00745-JAH-LR, 2026 WL 807451, at *5 (S.D. Cal. Mar. 24, 2026). Courts have also simply assumed authorization/ratification, *see Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 274 (N.D. Cal. 2015) (collecting cases), or inferred authorization/ratification from allegations "plausibly suggest[ing] a calculated plan to injure Plaintiffs," *id.*, or otherwise "showing that harm alleged could not have occurred in the absence of authorization or ratification by corporate employer[s]." *Anaya v. Machines de Triage et Broyage*, No. 18-CV-01731-DMR, 2019 WL 359421, at *5 (N.D. Cal. Jan. 29, 2019).

Here, Defendants contend that Plaintiff fails to "identify any conduct by any of [Defendants'] officers and/or agents that was willful and malicious" and that "no conduct . . . was identified that shows that the individual exercised substantial independent authority and judgment in the corporate decision making such that his or her decisions ultimately

determined corporate policy, as required." (ECF No. 12 at 9.) The Complaint alleges that Defendants' malicious and fraudulent actions were "undertaken by its officers, directors, and/or managing agents, and/or pursuant to policies and procedures adopted by its officers, directors, and/or managing agents." (ECF No. 1-3 at ¶14.) In regard to conduct by specific managing agents, the Complaint alleges that Defendants' Brand Manager, Marketing Director, and Associate Creative Director attended a meeting in which Plaintiff "disclosed the full scope of [its] Campaign" and that the Associate Creative Director later emailed Plaintiff "propos[ing] a specific execution opportunity tied to January 9, 2026." *Id.* at ¶¶22, 24. The Complaint further alleges that the President/Chief Executive Officer, Chief Marking Officer, Marketing Director, and Associate Creative Director participated in media coverage "amplify[ing] the perceived originality and strategic importance" of Defendants' Garbage Truck Takeover Campaign. *Id.* at ¶35-37.

Defendants cite no authority supporting application of Section 3294(b), a provision of California law, to prayers for punitive damages under DTSA. Even if the Court applies Section 3294(b) to both of Plaintiff's trade secret claims, Defendants cite no authority supporting their contention that Plaintiff's allegations are insufficient to satisfy the bar of Section 3294(b). Unlike in *Taiwan Semiconductor* or *Gastelum*, the Complaint here identifies specific individuals associated with the claims and plausibly alleges their status as "officers, directors, and/or managing agents" through their titles and conduct. *See Khan v. 7-Eleven, Inc.*, No. EDCV1400522DMGPLAX, 2015 WL 12743691, at *3 (C.D. Cal. Sept. 15, 2015) (finding a plausible allegation of "managing agent" status from circumstantial facts, even where "the FAC does not contain explicit allegations that [the employee] is a 'managing agent'"). Moreover, the Complaint's allegation of a "scheme to obtain the Campaign from Plaintiff," along with supporting factual allegations, plausibly allege a "calculated plan to injure Plaintiff[]" that could not have occurred absent authorization/ratification. *See Rees*, 308 F.R.D. at 274. Making all inferences in favor of the Plaintiff, the Court finds that the Complaint plausibly alleges that specified officers and

managing agents authorized or ratified a malicious or fraudulent scheme to obtain and use Plaintiff's Campaign without its consent.

Accordingly, Defendants' Motion to Dismiss the prayer for punitive damages in Plaintiff's trade secrets claims is denied.

## V. LEAVE TO AMEND

Plaintiff seeks leave to amend to correct the pleading deficiencies identified in this Order. (ECF No. 11 at 27.) Defendants oppose Plaintiff's request for leave to amend. (ECF No. 12 at 10.)

Federal Rule of Civil Procedure 15 mandates that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). "This policy is to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (per curiam) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)). The Court grants Plaintiff leave to amend the FAC to correct the deficiencies addressed in this Order.

## VI. CONCLUSION

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (ECF No. 4) is granted with respect to Plaintiff's claim for fraud. This claim is dismissed without prejudice and with leave to amend. Defendants' Motion to Dismiss (ECF No. 4) is denied with respect to all other claims.

IT IS FURTHER ORDERED that Plaintiff may file an amended complaint within thirty (30) days of the filing of this Order. If no amended complaint is filed within thirty (30) days, Defendants shall file an answer to the Complaint within forty (40) days of the filing of this Order.

Dated: 11/9/2026

William Q. Hayes

Hon. William Q. Hayes
United States District Court